1  Robert Ahdoot (SBN 172098)
   *twolfson@ahdootwolfson.com*
2  Bradley K. King (SBN 274399)
   *bking@ahdootwolfson.com*
3  AHDOOT & WOLFSON, PC
   10728 Lindbrook Drive
4  Los Angeles, CA  90024
   Tel: (310) 474-9111
5  Fax: (310) 474-8585

6  Scott Edelsberg, Esq. (*pro hac vice forthcoming*)
   EDELSBERG LAW, P.A.
7  19495 Biscayne Blvd #607
8  Aventura, FL 33180
   Telephone: 305-975-3320
9  scott@edelsberglaw.com

10 Andrew J. Shamis, Esq. (*pro hac vice forthcoming*)
   SHAMIS & GENTILE, P.A.
11 14 NE 1st Avenue, Suite 400
12 Miami, Florida 33132
   Telephone: 305-479-2299
13 ashamis@shamisgentile.com

14

15 *Counsel for Plaintiff and Proposed Class*

16              **UNITED STATES DISTRICT COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
17                   **Southern Division**

18

19 CARRIE HENRY, individually and on behalf of      Case No. 8:19-cv-977
   all others similarly situated,
20                                                   **CLASS ACTION**
                                                     **COMPLAINT**
21     *Plaintiff*,

22 v.                                                **JURY TRIAL DEMANDED**

23

24 DRYBAR HOLDINGS LLC, a California
   Limited Liability Company,
25

26     *Defendant*.

27 _____/

28

## CLASS ACTION COMPLAINT

1.     Plaintiff, Carrie Henry, brings this action against Defendant, Drybar Holdings LLC, to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## NATURE OF THE ACTION

2.     This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., (the "TCPA").

3.     Defendant is chain of salons that sells hair styling services and products. To promote its services, Defendant engages in unsolicited marketing, harming thousands of consumers in the process.

4.     Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals.  Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

5.     Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant.  Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call, in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

6.     Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to

CLASS ACTION COMPLAINT

1  reside in any judicial district in which it is subject to the court's personal jurisdiction,

2  and because Defendant provides and markets its services within this district thereby

3  establishing sufficient contacts to subject it to personal jurisdiction.   Further,

4  Defendant's tortious conduct against Plaintiff occurred within the State of California

5  and, on information and belief, Defendant has sent the same text messages complained

6  of by Plaintiff to other individuals within this judicial district, such that some of

7  Defendant's acts in making such calls have occurred within this district, subjecting

8  Defendant to jurisdiction in the State of California.

9  ## PARTIES

10  7.    Plaintiff is a natural person who, at all times relevant to this action, was a

11  resident of Miami-Dade County, Florida.

12  8.    Defendant is a California limited liability company whose principal office

13  is located at 125 Technology Dr Ste 150, Irvine CA 92618.  Defendant directs, markets,

14  and provides its business activities throughout the State of California.

15  ## THE TCPA

16  9.    The TCPA prohibits: (1) any person from calling a cellular telephone

17  number; (2) using an automatic telephone dialing system; (3) without the recipient's

18  prior express consent.  47 U.S.C. § 227(b)(1)(A).

19  10.    The TCPA defines an "automatic telephone dialing system" ("ATDS") as

20  "equipment that has the capacity - (A) to store or produce telephone numbers to be

21  called, using a random or sequential number generator; and (B) to dial such numbers."

22  47 U.S.C. § 227(a)(1).

23  11.    In an action under the TCPA, a plaintiff must only show that the

24  defendant "called a number assigned to a cellular telephone service using an automatic

25  dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d

26  1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

27

28

1       12.     The Federal Communications Commission ("FCC") is empowered to
2  issue rules and regulations implementing the TCPA.  According to the FCC's findings,
3  calls in violation of the TCPA are prohibited because, as Congress found, automated
4  or prerecorded telephone calls are a greater nuisance and invasion of privacy than live
5  solicitation calls, and such calls can be costly and inconvenient.  The FCC also
6  recognized that wireless customers are charged for incoming calls whether they pay in
7  advance or after the minutes are used.  *Rules and Regulations Implementing the Telephone*
8  *Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd
9  14014 (2003).

10       13.     In 2012, the FCC issued an order tightening the restrictions for automated
11  telemarketing calls, requiring "prior express **written** consent" for such calls to wireless
12  numbers.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of*
13  *1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

14       14.     To obtain express written consent for telemarketing calls, a defendant
15  must establish that it secured the plaintiff's signature in a form that gives the plaintiff a
16  "'clear and conspicuous disclosure' of the consequences of providing the requested
17  consent….and having received this information, agrees unambiguously to receive such
18  calls at a telephone number the [plaintiff] designates."  *In re Rules & Regulations*
19  *Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20,
20  1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

21       15.     The TCPA regulations promulgated by the FCC define "telemarketing"
22  as "the initiation of a telephone call or message for the purpose of encouraging the
23  purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. §
24  64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a
25  court must evaluate the ultimate purpose of the communication.  *See Golan v. Veritas*
26  *Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

27

28

16.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'"  *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

17.     "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services."  *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

18.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003).  This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future. Id.*

19.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

20.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent.  *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

21.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any

1   call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at \*3
2   (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained
3   Plaintiff's prior express consent before sending him the **text message**). (emphasis
4   added).

5        22.    As recently held by the United States Court of Appeals for the Ninth
6   Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade
7   the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation
8   under the TCPA 'need not allege any additional harm beyond the one Congress has
9   identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS
10  1591, at \*12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549
11  (2016) (emphasis original)).

**FACTS**

13       23.    On or about April 11, 2019, Defendant sent the following telemarketing
14  text messages to Plaintiff's cellular telephone number ending in 3036 (the "3036
15  Number"):

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20



21    24.    Defendant's text messages were transmitted to Plaintiff's cellular

22 telephone, and within the time frame relevant to this action.

23    25.    Defendant's text messages constitute telemarketing because they

24 encouraged the future purchase or investment in property, goods, or services, i.e.,

25 selling Plaintiff salon products and services.

26    26.    The information contained in the text message advertises Defendant's

27 "Detox Clear Invisible Dry Shampoo," which Defendant sends to promote its business.

28

27.     Plaintiff received the subject texts within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.   Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

28.     At no point in time did Plaintiff provide Defendant with her express written consent to be contacted using an ATDS.

29.     Plaintiff is the subscriber and sole user of the 3036 Number and is financially responsible for phone service to the 3036 Number.

30.     The impersonal and generic nature of Defendant's text message demonstrates that Defendant utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130; *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

31.     The text messages originated from telephone number 883-86, a number which upon information and belief is owned and operated by Defendant.

32.     The number used by Defendant (883-86) is known as a "short code," a standard 5-digit code that enables Defendant to send SMS text messages *en masse*, while

1   deceiving recipients into believing that the message was personalized and sent from a

2   telephone number operated by an individual.

3         33.    Short codes work as follows:  Private companies known as SMS gateway

4   providers have contractual arrangements with mobile carriers to transmit two-way SMS

5   traffic.  These SMS gateway providers send and receive SMS traffic to and from the

6   mobile phone networks' SMS centers, which are responsible for relaying those messages

7   to the intended mobile phone. This allows for the transmission of a large number of

8   SMS messages to and from a short code.

9         34.    Specifically, upon information and belief, Defendant utilized a

10   combination of hardware and software systems to send the text messages at issue in

11   this case.  The systems utilized by Defendant have the capacity to store telephone

12   numbers using a random or sequential generator, and to dial such numbers from a list

13   without human intervention.

14         35.    Defendant's unsolicited text messages caused Plaintiff actual harm,

15   including invasion of her privacy, aggravation, annoyance, intrusion on seclusion,

16   trespass, and conversion.  Defendant's text messages also inconvenienced Plaintiff and

17   caused disruption to her daily life.

18                                         **CLASS ALLEGATIONS**

19       **PROPOSED CLASS**

20         36.    Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23,

21   on behalf of herself and all others similarly situated.

22         37.    Plaintiff brings this case on behalf of a Class defined as follows:

23

24           **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, advertising Defendant's services, without the recipients' prior express written consent.**

25

26

27

28

38.     Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

**NUMEROSITY**

39.     Upon information and belief, Defendant has placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

40.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

41.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(1)     Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;

(2)     Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;

(3)     Whether Defendant's conduct was knowing and willful;

(4)     Whether Defendant is liable for damages, and the amount of such damages; and

(5)     Whether Defendant should be enjoined from such conduct in the future.

42.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular

**TYPICALITY**

43.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

44.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

45.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

46.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

CLASS ACTION COMPLAINT

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

47.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

48.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

49.     Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

50.     These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

51.     Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

52.     Defendant knew that it did not have prior express consent to make these calls and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

53.     As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each

CLASS ACTION COMPLAINT

1   entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class

2   are also entitled to an injunction against future calls. *Id.*

## COUNT II
## Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Class)

6   54.   Plaintiff re-allege and incorporate paragraphs 1-46 as if fully set forth

7   herein.

8   55.   At all times relevant, Defendant knew or should have known that its

9   conduct as alleged herein violated the TCPA.

10   56.   Defendant knew that it did not have prior express consent to make these

11   calls and knew or should have known that its conduct was a violation of the TCPA.

12   57.   Because Defendant knew or should have known that Plaintiff and Class

13   Members had not given prior express consent to receive its autodialed calls, the Court

14   should treble the amount of statutory damages available to Plaintiff and the other

15   members of the putative Class pursuant to § 227(b)(3) of the TCPA.

16   58.   As a result of Defendant's violations, Plaintiff and the Class Members are

17   entitled to an award of $1,500.00 in statutory damages, for each and every violation,

18   pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

19   **WHEREFORE**, Plaintiff, Carrie Henry, on behalf of herself and the other

20   members of the Class, pray for the following relief:

21   a.   A declaration that Defendant's practices described herein violate the

22   Telephone Consumer Protection Act, 47 U.S.C. § 227;

23   b.   An injunction prohibiting Defendant from using an automatic telephone

24   dialing system to call and text message telephone numbers assigned to cellular

25   telephones without the prior express permission of the called party;

26   c.   An award of actual and statutory damages; and

27   d.   Such further and other relief the Court deems reasonable and just.

28

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

Respectfully submitted,

AHDOOT & WOLFSON, PC

Dated: May 22, 2019

/s/ Robert Ahdoot
Robert Ahdoot (SBN 172098)
twolfson@ahdootwolfson.com
Bradley K. King (SBN 274399)
bking@ahdootwolfson.com
10728 Lindbrook Drive
Los Angeles, CA  90024
Tel: (310) 474-9111
Fax: (310) 474-8585

SHAMIS & GENTILE, P.A.
Andrew J. Shamis, Esq.*
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 1205
Miami, FL 33132
Telephone: 305-479-2299

EDELSBERG LAW, PA
Scott Edelsberg, Esq.*
Florida Bar No. 0100537
scott@edelsberglaw.com
19495 Biscayne Blvd #607
Aventura, FL 33180
Telephone: 305-975-3320

* pro hac vice forthcoming

Counsel for Plaintiff and the Class

CLASS ACTION COMPLAINT